UNITED HANDICAPPED FEDERATION, a Minnesota Non-Profit Corporation, National Paraplegia Foundation, North Country Chapter, a Minnesota Non-Profit Corporation, Michael J. Bjerkesett, Richard Van Wagner, Stephen Wrbanich, Claudia Fuglie, Carolyn Emerson, and Ronel Moore, Appellants,

v.

Camille D. ANDRE, Individually and in his official capacity as Chief Administrator of Metropolitan Transit Commission, Douglas Kelm, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Leonard W. Levine, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Bruce G. Nawrocki, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Karl Neid, Jr., Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Alice W. Rainville, Individually and in her official capacity as Commissioner of the Metropolitan Transit Commission, Ruth E. Franklin, Individually and in her official capacity as Commissioner of the Metropolitan Transit Commission, Gayle M. Kincannon, Individually and in her official capacity as Commissioner of the Metropolitan Transit Commission, Frank W. Snowden, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, William O. Cooley, Individually and in his official capacity as Commissioner of the Metropolitan Transit Commission, Edward Hjermstad, Individually, Walter Saxum, Individually, Loring M. Staples, Jr., Individually, Leonard Thiel, Individually, Richard S. Page, Individually and in his official capacity as the Administrator of the Urban Mass Transportation Administration, Robert E. Patricelli, Individually, Brock Adams, Individually and in his official capacity as the Secretary of the United States Department of Transportation, William Cole-

man, Jr., Individually, Joseph A. Califano, Individually and in his official capacity as the Secretary of the Department of Health, Education and Welfare, Appellees.

No. 79–1606.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1980.

Decided May 14, 1980.

See also D.C., 409 F.Supp. 1297; 8 Cir., 558 F.2d 413.

William M. Mahlum, St. Paul, Minn., for appellant.

David S. Doty, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, Minn. (argued), and James R. Steilen, Minneapolis, Minn., on brief, for Metropolitan Transit Commission.

John M. Lee, Asst. U. S. Atty., Minneapolis, Minn. (argued), Thorwald H. Anderson, Jr., U. S. Atty., and Robert W. Batchelder, Asst. Chief Counsel, Urban Mass Transportation Administration, Washington, D. C., on brief for federal appellees.

Before LAY, Chief Judge, and BRIGHT and HENLEY, Circuit Judges.

LAY, Chief Judge.

United Handicapped Federation et al. (UHF) brought suit in 1975, alleging the lack of transit services for the handicapped in and around the Minneapolis and St. Paul areas. The named defendants were the administrator and members of the Metropolitan Transit Commission (MTC), the administrator of the Urban Mass Transportation Administration (UMTA), the Secretary of the United States Department of Transportation (DOT), the Secretary of the United States Department of Health, Education and Welfare (HEW), and AM General Corporation. The plaintiffs alleged, *inter alia*, violations of the Rehabilitation Act of 1973 (29 U.S.C. § 794), the Urban Mass Transportation Act of 1964, as amended (49 U.S.C. §§ 1602, 1612), the Federal-Aid Highway Amendments of 1974 (23 U.S.C. §§ 101, et seq., as amended), section 315 of the Department of Transportation and Related Agencies Appropriation Act of 1975, Pub.L. No.93–391, 88 Stat. 769 (codified in scattered sections of 14, 20, 49 U.S.C), and 42 U.S.C. §§ 1983, 1985(3). Plaintiffs sought declaratory and injunctive relief as well as damages, costs and attorneys' fees.

The district court denied injunctive relief sought by plaintiffs on March 11, 1976. This court reversed and remanded the case for further proceedings. *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977). After remand, plaintiffs filed an amended complaint seeking declaratory relief that the April 30, 1976, UMTA regulations were unlawful and void; injunctive relief prohibiting HEW from issuing guidelines that do not protect the handicapped and prohibiting UMTA and DOT from funding any programs that do not insure equal provisions for the handicapped.

Defendants filed motions for summary judgment. Thereafter, plaintiffs attempted to work out what they felt was a compromise. In consideration for the MTC passing a resolution to provide transportation for the handicapped by a specific date, the plaintiffs agreed to execute a stipulation of settlement dismissing the lawsuit. At a meeting held December 13, 1977, the

MTC considered a resolution, drafted in part by William Mahlum, counsel for plaintiffs, which called for the expansion of MTC's service to the handicapped. Incremental increases in transportation service to the handicapped, culminating in 100% service by February 1, 1981, was the goal of the resolution. The resolution anticipated using a multi-model approach to provide the service, including retrofitting regular buses.

The resolution introduced at the December 13 meeting did not pass. An amended resolution which did not specify the method of delivery of the service, however, did pass on December 21, 1977. Members of the Minnesota Legislature who were interested in the resolution pledged to try to secure the funding for the project from the legislature.

On February 8, 1978, the defendants' motions for summary judgment were argued. On March 6, 1978, the district court filed a memorandum decision granting summary judgment in favor of the defendant AM General Corporation on all claims and in favor of the remaining defendants which respect to MTC mass transportation projects approved by UMTA prior to April 27, 1976. The court specifically found that the new HEW, UMTA, and Federal Highway Administration (FHWA) regulations and guidelines had no effect on its prior ruling with respect to MTC projects ap-

proved by UMTA prior to April 27, 1976. The district court did not rule on the declaratory relief sought by plaintiffs defining their rights under the applicable statutes and regulations.

Plaintiffs and the local defendants entered into a "Stipulation of Settlement" on May 3, 1978, which stated that in consideration for the terms, dates, and conditions set forth in Resolution 77–115, plaintiffs agreed to dismiss the MTC defendants from the lawsuit and "resolve fully and completely all claims of the parties to this Stipulation, save and except the question of Plaintiffs' attorneys' fees and costs."[1] Pursuant to the stipulation, the district court entered an order on May 10, 1978, dismissing all plaintiffs' claims against the MTC defendants, except the question of attorneys' fees and costs.[2]

The attorneys' fees issue lay dormant until September 20, 1978, when plaintiffs filed their motion for attorneys' fees. MTC answered plaintiffs' motion on October 23, 1978. On June 11, 1979, the district court denied plaintiffs' motion for attorneys' fees on the ground that they were not prevailing parties under either 42 U.S.C. § 1988 or 29 U.S.C. § 794a(b).[3]

■ The fundamental issue presented is whether plaintiffs were prevailing parties under 29 U.S.C. § 794a(b).[4] *Nadeau v. Hel-*

---

1. Plaintiffs assert the delay for entering into the Stipulation of Settlement was to gain reassurance that the MTC was making a good faith effort to implement the resolution.

2. Plaintiffs and the federal defendants entered into a "Stipulation of Dismissal" and a dismissal order was entered on August 31, 1978. The stipulation between plaintiffs and federal defendants did not impose any obligations on the federal defendants.

3. On November 6, 1978, the Rehabilitation, Comprehensive Services, and Development Disabilities Amendments of 1978, Pub.L.No.95–602 (codified in scattered sections of 29, 38, 42 U.S.C.) became law. Part of that public law amended 29 U.S.C. § 794a to allow attorney's fees. 29 U.S.C. § 794a(b) provides:

 (b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the

United States, a reasonable attorney's fee as part of the costs.

4. Attorneys' fees statutes have application to cases pending when the statute is passed. *See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) (interpreting the Civil Rights Attorney's Fees Awards Act of 1976, amending 42 U.S.C. § 1988); *Bradley v. School Bd.*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (interpreting section 718 of the Education Amendments of 1972, 20 U.S.C. § 1617). Several decisions have applied a statute granting attorneys' fees to cases in which the only issue pending when the statute became effective, was that of attorneys' fees. *Rainey v. Jackson State College*, 551 F.2d 672, 675–76 (5th Cir. 1977); *Mental Patient Civil Liberties Project v. Hospital Staff Civil Rights Comm., Dept. of Public Welfare*, 444 F.Supp. 981, 982–84 (E.D.Pa.1977); *Armstead v. Starkville Mun. Separate School Dist.*, 395 F.Supp. 304, 306–08 (N.D.Miss.), aff'd, 519 F.2d 1087 (1975); *see*

*gemoe*, 581 F.2d 275 (1st Cir. 1978) established guidelines by which a "prevailing party" can be determined in a case which has been settled.[5] The claim in that case arose under 42 U.S.C. § 1988. The court conducted a two part test. The first part of the test is a question of fact:

> [N]o award is required if the court determines that plaintiff's suit was completely superfluous in achieving the improvements undertaken by defendants on plaintiff's behalf. . . . However, if . . . the plaintiff's suit and their attorney's efforts were a necessary and important factor in achieving the improvements, although they could not have accomplished as much as they did without the constructive leadership of New Hampshire officials, plaintiffs should be held to have overcome their first hurdle toward their goal of receiving *some* attorney fees. Of course, this is not an "all or nothing" determination.

*Id.* at 281.

The second part of the *Nadeau* test is a legal question:

> If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.

*Id.* at 281.

*THE FACTUAL QUESTION*

 The district court did not determine that plaintiffs' suit was "completely superfluous" but it noted that it could not find that plaintiffs' suit and their attorneys' efforts were a necessary and important fac-

tor in achieving the improvements. We must respectfully disagree. The record indicates that plaintiffs' suit was a *factor of importance* in obtaining the compromise resolution with the MTC. The deposition of Mr. Karl Neid, Jr., an MTC member, states:

> Q. Was it your understanding that if that resolution was adopted this lawsuit would be dismissed?
>
> A. That's correct.
>
> Q. Was that a principal factor in your consideration to resolving the whole issue of handicapped transportation?
>
> A. Very definitely so.

Mr. William O. Cooley also a member of the MTC, stated that he understood the adoption of the resolution would accomplish two things: 1) it would provide a higher level of service for handicapped persons wanting transportation, and 2) dismissal of the lawsuit. Several other members of the MTC indicated the dismissal of the lawsuit was a factor which prompted them to vote for the resolution. Richard L. Brown, Director of the Office of Transit Administration, testified that at a meeting held in his office on December 19, 1977, at which key members of the MTC were present, there was a general understanding that if the resolution was passed the lawsuit would be dismissed.

At the very least, we think it can be said the record supports a finding that the lawsuit served in part as a catalyst which prompted the defendant to take action. *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 429–30 (8th Cir. 1970). It is not necessary for the plaintiffs' lawsuit to be the sole cause or even the primary

*also Weisenberger v. Huecker*, 593 F.2d 49, 50–53 (6th Cir.), *cert. denied*, 444 U.S. 880, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *King v. Greenblatt*, 560 F.2d 1024, 1025–26 n. 2 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Martinez Rodriguez v. Jimenez*, 551 F.2d 877, 878–79 (1st Cir. 1977); *Lytle v. Commissioners of Election*, 541 F.2d 421, 424–25 (4th Cir. 1976), *cert. denied*, 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978); *Hartmann v. Gaffney*, 446 F.Supp. 809, 811 (D.Minn.1977); *Keyes v. School Dist. No. 1*, 439 F.Supp. 393, 397–401 (D.Colo.1977); *Buckton v. NCAA*, 436 F.Supp. 1258, 1262–63

(D.Mass.1977); *Wilson v. Chancellor*, 425 F.Supp. 1227, 1228–30 (D.Or.1977); *Latham v. Chandler*, 406 F.Supp. 754, 755–56 (N.D.Miss. 1976).

5. This circuit has held that a plaintiff's lawsuit which does not directly result in the relief requested but does prompt the defendant to act may qualify for an attorney's fee award. *See International Soc'y for Krishna Consciousness, Inc. v. Andersen*, 569 F.2d 1027 (8th Cir. 1978); *Parham v. Southwestern Bell Tel. Co.*, 433 F.2d 421 (8th Cir. 1970).

cause of defendants' decision to settle. Nor is it necessary or practical for the plaintiffs to prove that their rights were in fact violated under traditional standards of analysis. *See Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir. 1978).

The chronological sequence of events is an important factor in determining whether or not it can be inferred that the defendants guided their actions in response to plaintiffs' lawsuit. It is true that defendants had made some efforts at introducing transportation for the handicapped prior to the filing of plaintiffs' lawsuit. However, certain events took place after the filing of the lawsuit. The record shows that Donald Hubert, Special Projects Director for the MTC, who was in charge of developing a plan (later called Project Mobility) for handicapped transportation, spent only 20% of his time working on that project before the lawsuit was filed. Immediately *after* the lawsuit was filed, he measurably increased the percentage of time devoted to that project. He opined that the MTC "accelerated" its efforts in the area of handicapped transportation as a result of the lawsuit. Additional persons were assigned the the project *after* the lawsuit was filed. Mr. Hubert said he felt the lawsuit "motivated some additional activity." The proposed budgets for Project Mobility increased sharply *after* the lawsuit was filed.

*THE LEGAL QUESTION*

The district court found plaintiffs were not prevailing parties in the legal sense because the summary judgment order of March 7, 1978, disposed of all claims asserted by plaintiffs. Plaintiffs urge, however, that the order of March 7, 1978, did not dispose of the claims set forth in paragraphs 3, 4, 6, 7, 9, 10, 11, and 12 of the amended complaint. In part, those paragraphs request that the district court issue a declaratory judgment which defines the rights of the plaintiffs, that the UMTA regulations be declared null and void, that a permanent injunction be issued declaring that persons, including the plaintiffs, who ambulate by wheelchair have equal rights with other persons to utilize the public transportation facilities operated by the MTC, and that all of the defendants develop a plan under the court's supervision which would insure that the handicapped can effectively utilize the public transportation facilities offered. It does not appear that the district court's opinion granting defendants' motions for summary judgment with respect to projects approved by UMTA prior to April 27, 1976, disposed of all plaintiffs' claims.

In addition, plaintiffs argue that the Stipulation of Settlement was entered into on May 3, 1978, several days prior to the running of the time for filing a notice of appeal. Fed.R.App.P. 4(a). Even if the district court's order had disposed of all the issues, plaintiffs could have appealed to this court. There were still active appealable issues at the time the Stipulation of Settlement took place. *See Mental Patient Civil Liberties Project v. Hospital Staff Civil Rights Committee, Department of Public Welfare,* 444 F.Supp. 981, 984 (E.D.Pa.1977).

The thrust of the district court's decision does not answer the critical question of whether defendants' conduct can be viewed as "gratuitous," that is, whether plaintiffs' lawsuit was "frivolous, unreasonable, or groundless." Plaintiffs had obtained a favorable ruling from this court. Their lawsuit had brought additional activity in the area of handicapped transportation into the MTC offices. The statutes and regulations involved in this lawsuit raise a duty on the part of local officials to provide adequate transportation to the handicapped. Plaintiffs' attempt to hasten the implementation of those regulations and to determine their rights under the statutes and regulations appears reasonable. The lawsuit cannot be categorized as frivolous, unreasonable, or groundless.

██ The Supreme Court has stated that in a suit under 42 U.S.C. § 2000a–3(b): "[O]ne who succeeds in obtaining [relief]

. . . should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Plaintiffs meet both parts of the *Nadeau* test and, therefore, are entitled to some reasonable compensation for attorneys' fees from the MTC defendants in their official capacities only.[6]

### AMOUNT ALLOWED

■ Plaintiffs' counsel have requested this court to award them $216,832.25 in attorneys' fees and costs. As the district court pointed out, this suit was brought alleging violations of numerous statutes and regulations both state and federal and violations of the United States Constitution. The fact that plaintiffs did not prevail under all their theories and did not receive all the relief they requested does not preclude them from receiving attorneys' fees. Nevertheless, the result obtained is one factor to be considered in setting the amount of an award of attorneys' fees to a prevailing party. *Brown v. Bathke*, 588 F.2d 634, 637 (8th Cir. 1978); *see Firefighters Institute for Racial Equality v. St. Louis*, 549 F.2d 506, 516 (8th Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

■ In the present case, the record makes it clear that a considerable amount of the time spent by plaintiffs' counsel was in attempting to block the purchase of over 300 buses by the MTC that were not equipped to handle the handicapped. Plaintiffs failed in their efforts in this area. Much of the relief which they sought was not granted nor was it likely to be granted if they had continued to litigate. We, nonetheless, find that plaintiffs' efforts have served to a limited extent to expedite the planning and achievements gained. This we believe sufficient to grant some award for recognition of the services rendered.

We believe a reasonable award for attorneys' fees should not exceed $10,000 and allocation of reimbursable costs should be in the sum of $2,500.[7]

The judgment of the district court is vacated and remanded for entry of judgment. Plaintiffs' counsel shall be awarded an additional $500 for this appeal. Costs of the appeal are to be assessed against the appellees.

It is so ordered.

---

6. Federal defendants argue that plaintiffs are not entitled to attorneys' fees against them for two reasons: 1) Plaintiffs were not prevailing parties against federal defendants, and 2) the statutes authorizing attorneys' fees in this case, 42 U.S.C. § 1988 and 29 U.S.C. § 794a(b), do not waive sovereign immunity.

Unlike the local defendants, federal defendants promised nothing to plaintiffs to induce them to dismiss their suit. The negotiations with the MTC took place without any approval by federal defendants which, of course, was not necessary. Federal defendants have given nothing to plaintiffs nor are they under any obligation to do so. Plaintiffs' dismissal of their lawsuit against federal defendants was completely gratuitous. We find that plaintiffs were not prevailing parties against federal defendants. Under the circumstances, we need not pass on the question of sovereign immunity.

7. Having decided that plaintiffs are entitled to attorneys' fees under 29 U.S.C. § 794a(b), we need not discuss their petition for attorneys' fees under 42 U.S.C. § 1988.