Thomas F. SMITH, Jr., et al.,
Plaintiffs, Appellees,

v.

CUMBERLAND SCHOOL COMMITTEE,
et al., Defendants, Appellants.

No. 82–1524.

United States Court of Appeals,
First Circuit.

Argued Jan. 3, 1983.
Decided March 24, 1983.

Forrest Avila, Providence, R.I., for defendants, appellants.

George M. Prescott, Lincoln, R.I., with whom Jonathan F. Oster, and Oster, Groff & Prescott, Lincoln, R.I., were on brief, for plaintiffs, appellees.

Before ALDRICH, Senior Circuit Judge, CAMPBELL and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from an award of attorneys' fees in an action brought to secure a free appropriate public education for a handicapped child. Plaintiff Thomas F. Smith, III is a handicapped child suffering from cerebral palsy and a variety of physical and emotional handicaps. Since December 1974 he has been enrolled in the Day Hospital Program at Emma Pendelton Bradley Hospital, which all parties agree provides him with an appropriate education. The Cumberland School Committee, Thomas's local education agency, 20 U.S.C. § 1401(8), partially funded his tuition at Bradley for one year. In November 1976, however, the school committee informed Thomas's parents, who are also plaintiffs in this action, that it would cease paying for Thomas's tuition because it believed that the Rhode Island Department of Mental Health, Retardation and Hospitals (MHRH) was the agency responsible for financing Thomas's education.

On November 26, 1976 plaintiffs commenced the present action in the United States District Court for the District of Rhode Island. The complaint as amended charged the Cumberland School Committee with violating the fourteenth amendment to the Constitution, the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. §§ 1401 *et seq.,* and the Rehabilitation Act of 1973, 29 U.S.C. § 794, by denying Thomas a free appropriate education, discriminating against him because he was emotionally disturbed, and refusing to grant him an impartial hearing prior to the termination of tuition payments.[1] On De-

---

1. The original complaint only charged that the school committee violated the Constitution by refusing to fund Thomas's education at Bradley pending administrative review of the committee's decision. In May 1978 the complaint was amended to include claims under the newly

cember 22, 1976 the district court issued a preliminary injunction requiring the school committee to maintain Thomas at Bradley while plaintiffs exhausted their administrative remedies. On January 20, 1977 a hearing was held before the school committee. The school committee affirmed its prior decision. The plaintiffs then appealed to the Rhode Island Commissioner of Education, one of the appellants here. The Associate Commissioner of Education, the other appellant here, scheduled a hearing for November 2, 1977. The plaintiffs then moved that the Associate Commissioner recuse himself and provide an impartial hearing officer. This motion was denied. Following the hearing, the Associate Commissioner affirmed the school committee's decision. Plaintiffs then amended their complaint to name the Commissioner and Associate Commissioner as defendants.

On December 22, 1978 the district court decided that the controversy before it might be resolved by a determination as to which agency was responsible under Rhode Island law for Thomas's education. Accordingly it certified this issue to the Rhode Island Supreme Court,[2] which ruled that the school committee, and not the MHRH, was responsible under state law for paying for Thomas's education. *Smith v. Cumberland School Committee*, R.I., 415 A.2d 168 (1980). The Rhode Island Supreme Court stated that a contrary result risked placing the state's law in conflict with the federal EAHCA.

After the Rhode Island Supreme Court rendered its decision, the district court found that plaintiffs won all they sought under state law and granted a permanent injunction. Federal statutory and constitutional issues were not reached. We affirmed the district court's judgment in an unpublished decision.

Plaintiffs then sought attorneys' fees. An agreement was reached with the school committee whereby the committee paid

$8,000 in attorneys' fees for the costs plaintiffs incurred in securing the preliminary injunction and arguing before the school committee. The district court decided the question of attorneys' fees with regard to the other defendants. The district court, relying on its decision in *Turillo v. Tyson*, 535 F.Supp. 577 (D.R.I.1982), found that plaintiffs were entitled to fees under 42 U.S.C. § 1988 because they had stated constitutional section 1983 claims, and under 29 U.S.C. § 794a(b) because they had alleged violation of the Rehabilitation Act. The district court further reasoned that because the plaintiffs were required by the EAHCA to exhaust their administrative remedies, and because the district court refused to hear the federal claims before the state claims were decided by the Rhode Island Supreme Court, the plaintiffs were entitled to attorneys' fees for all of the work done before the state agencies and the state court. *See New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980); *Bartholomew v. Watson*, 665 F.2d 910 (9th Cir.1982). Fees of $32,109 were awarded. It is from this judgment that the Commissioner and Associate Commissioner appeal.

Appellants raise three issues on appeal. First, they argue that neither section 1988 nor section 794a(b) provide for fees in this case because it was essentially brought under the EAHCA which does not provide for attorneys' fees. Second, they argue that even if fees are available, the district court should not have compensated plaintiffs for the attorneys' work before the state agencies and state court. Third, they argue that the district court erred in accepting an attorney's affidavit rather than original time sheets as evidence of the hours the attorney spent on the case. Because we decide that attorneys' fees are not available here at all, we only discuss that issue.

effective EAHCA, 20 U.S.C. § 1415. On September 16, 1980 the complaint was again amended to include claims under the Rehabilitation Act and the equal protection clause of the Constitution.

**2.** Two questions were certified concerning the construction and interaction of R.I.Gen.Laws §§ 16–24–1; 16–25–2 and 40.1–7–1—40.1–7–9.

## A. Section 1988

■ Under what is labelled the American Rule, attorneys' fees are only available as a general matter when statutory authority so provides. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Since the narrow exceptions under the American Rule are not applicable here, our task is to determine whether or not there is statutory authority for awarding attorneys' fees in the present case.

This action and the relief granted fall within the parameters of EAHCA, a federal statute which establishes a comprehensive federal-state scheme for the provision of special education to handicapped children. The complaint alleged that the school committee's refusal to fund Thomas's placement at Bradley denied him a free appropriate public education as defined by the EAHCA. 20 U.S.C. § 1401(18). The complaint also claimed that the hearings provided by the Rhode Island officials did not comply with certain due process provisions imposed by the EAHCA upon participating states because they were not impartial. 20 U.S.C. § 1415(c). And ultimately it was to the EAHCA that the Rhode Island Supreme Court looked in determining that state law required the school committee to fund Thomas's placement at Bradley. R.I. 415 A.2d at 172. Not only was EAHCA the foundation of plaintiffs' victory, its provisions encompassed all the relief for which plaintiffs now seek attorneys' fees, i.e., all relief beyond the preliminary injunction. *See* footnote 3, *infra.*

Yet while EAHCA provides expressly for the bringing of private enforcement actions such as this one, 20 U.S.C. § 1415(e), it contains no provision for attorneys' fees. *Hymes v. Harnett County Board of Education,* 664 F.2d 410 (4th Cir.1982). For authority to award fees in the instant case, the district court had to turn to other statutes, primarily to 42 U.S.C. § 1988 which authorizes courts to award attorneys' fees to prevailing parties in actions brought under 42 U.S.C. § 1983. In so doing, the district court relied upon authorities holding that fees may be awarded under section 1988 when the claim upon which the plaintiff actually prevailed was accompanied by a "substantial," though undecided, section 1983 claim arising from the same nucleus of facts. *Lund v. Affleck,* 587 F.2d 75, 77 (1st Cir.1978). *See, e.g., Luria Bros. & Co., Inc. v. Allen,* 672 F.2d 347, 357 (3d Cir.1982); *Southeast Legal Defense Group v. Adams,* 657 F.2d 1118 (9th Cir.1981). Here, plaintiffs' section 1983 claims were arguably "substantial" in that, though weak, they would at least have supported federal jurisdiction. *See Maher v. Gagne,* 448 U.S. 122, 127, 100 S.Ct. 2570, 2573, 65 L.Ed.2d 653 (1980), *citing Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Prior to enactment of EAHCA in 1975, one district court had held that the equal protection clause of the Constitution required school districts to provide special education to handicapped children. *See Mills v. Board of Education,* 348 F.Supp. 866 (D.D.C.1972). And the Eighth Circuit has held that due process claims akin to plaintiffs' were sufficiently colorable to sustain a fees award under section 1988. *Robert M. v. Benton,* 671 F.2d 1104, 1106 (8th Cir.1982).

■ But even if plaintiffs' section 1983 claims qualify as "substantial," we do not think that fact alone created authority for fees in a case bottomed so completely on an encompassing federal statute that does not authorize fees. *Alyeska* makes clear that it is for Congress, not the courts, to pick and choose among types of actions warranting fees. 421 U.S. at 269, 95 S.Ct. at 1627. Thus the question before us remains one of finding affirmative congressional sanction for fees in this situation. We can find none. The federal statute under which relief was obtained here is a far-reaching statutory and administrative scheme for the provision of free appropriate public education for handicapped children. 20 U.S.C. §§ 1401 *et seq.* While the creating and processing of educational programs for handicapped children is left to the states and to state law, the federal Act imposes substantial requirements and standards on the states. The Act not only creates sub-

stantive rights for handicapped children, but it also establishes detailed remedial procedures, including provisions for state administrative due process hearings and, as noted, private lawsuits in the federal and state courts to be brought by persons dissatisfied with state and local plans for educating handicapped children. Given the Act's comprehensiveness, we do not see how the singular omission of any provision for attorneys' fees can be rectified by recourse to section 1988. *See Hymes v. Harnett County Board of Education,* 664 F.2d 410 (4th Cir.1981); *Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981); *Noe v. Ambach,* 542 F.Supp. 70 (S.D.N.Y.1982); *Tatro v. Texas,* 516 F.Supp. 968 (N.D.Tex.1981). *But see Monahan v. Nebraska,* 687 F.2d 1164 (8th Cir.1982); *Hastings v. Maine-Endwell School District,* 676 F.2d 893 (2d Cir.1982); *Robert M. v. Benton,* 671 F.2d 1104; *Jose P. v. Ambach,* 669 F.2d 865 (2d Cir.1982); *Gary B. v. Cronin,* 542 F.Supp. 102, 121 (N.D.Ill.1982); *Department of Education v. Katherine D.,* 531 F.Supp. 517 (D. Hawaii 1982).

Support for our view is found in the Supreme Court's recent discussion of section 1983 in *Middlesex County Sewage Authority v. Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). The Court there considered whether section 1983 created an action for violation of a federal statute when the statute itself was part of an act containing comprehensive remedial measures but no private right of action. The Court stated that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to preclude the remedy of suits under § 1983." *Id.* at 20, 101 S.Ct. at 2626. *Middlesex County* may not logically preclude a section 1983 action for violation of the EAHCA; because the EAHCA expressly *recognizes* a private right of action, rather than denying one as did the federal pollution statutes in *Middlesex County,* the inference is weaker that Congress intended to preclude suit altogether under section 1983. However, *Middlesex County* does support the more general proposition that when a statute creates a comprehensive remedial scheme, intentional "omissions" from that scheme should not be supplanted by the remedial apparatus of section 1983. Here, the EAHCA provides an express private right of action, but it omits entirely any provision for attorneys' fees. This omission is just as significant a part of the remedial scheme of the EAHCA as was the lack of a private right of action under the pollution statutes in *Middlesex County,* and the omission has the same preclusive effect with regard to *section 1988* that the lack of a private remedy in *Middlesex County* had with regard to *section 1983.*

This principle precludes section 1988 fees for the constitutional claims at issue here. The fact that the section 1983 claims alleged here are based upon independent constitutional violations rather than violations of the EAHCA itself is immaterial. The constitutional claims alleged here, a denial of due process and a denial of a free appropriate public education to Thomas because of his handicap, are factually identical to the EAHCA claims. Indeed, in enacting the EAHCA Congress sought to ensure that handicapped children receive the very "rights" that plaintiffs claimed were constitutional under section 1983. *See* S.Rep. No. 168, 94th Cong., 1st Sess. 6–7, *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1430–31 (legislation said to be designed to enable states to fulfill their constitutional obligations to handicapped children). Thus, the only difference between the statutory and constitutional claims is that the former carries with it a far more favorable legal standard for the plaintiffs and enabled them to prevail on what would otherwise have been fairly questionable claims. Because Congress, in providing statutory remedies for the same factual complaints, did not authorize attorneys' fees for such actions, we do not believe that section 1988 is a sufficient basis for the granting of attorneys' fees here. Plaintiffs' mere recitation of a section 1983 claim cannot create a right to attorneys' fees in litigation as to which Congress, perhaps recognizing the shortness of school funds, has not seen fit to make a special award. *Cf. Scruggs v. Campbell,*

630 F.2d 237 (4th Cir.1980) (plaintiffs cannot evade EAHCA's exhaustion requirements merely by reciting section 1983 in their complaint). If this were not so, attorneys' fees would become available in almost every case by the mere incantation of section 1983. *See Civil Rights Attorneys' Fees in Cases Resolved on State Pendent and Statutory Grounds,* 130 U.Pa.L.Rev. 488, 518 (1981).

■ This is not to say that the EAHCA in any way limits the substantive scope of a handicapped child's constitutional rights. Should a handicapped child have a constitutional claim that is not provided for by the EAHCA, section 1983 and therefore section 1988 might be available.[3] We hold only that where, as here, the constitutional allegations arise from the same factual underpinnings as the statutory claims, section 1988 does not apply.

## B. *The Rehabilitation Act*

This district court also found that attorneys' fees were available under section 505 of the Rehabilitation Act, 29 U.S.C. § 794a(b). As with section 1988, attorneys' fees are available under section 794a(b) whenever a party presents a substantial section 504 claim even if they do not ultimately prevail under that claim. *United Handicapped Federation v. Andre,* 622 F.2d 342 (8th Cir.1980). The question before us, therefore, is whether section 504 created a substantial claim in this case.

The existence of any private action under section 504 is in doubt. Several circuits have implied such a right, *e.g., United Handicapped Federation v. Andre,* 622 F.2d 342; *Coleman v. Darden,* 595 F.2d 533, 538 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979); *Kampmeier v. Nyquist,* 553 F.2d 296 (2d Cir.1977), but recent Supreme Court dicta suggests otherwise. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 27, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). We need not resolve the question, however. Even if there is generally a private right of action under section 504, we hold that attorneys' fees are unavailable here under the accompanying fees provision. 29 U.S.C. § 794a(b).

■ We reach this conclusion for substantially the same reasons that we reject an attorneys' fees award under section 1988. Section 504 of the Rehabilitation Act is a general prohibition of discrimination against otherwise qualified handicapped individuals in federally funded programs.[4] It does not specifically apply to the education of handicapped children.[5] The EAHCA, in contrast, is a comprehensive act specifically providing substantive and procedural rights for handicapped children denied an appropriate public education. While the more specific rights created by the EAHCA may

3. To the extent plaintiffs' securing of a preliminary injunction fell outside any relief available under EAHCA, the attorneys' fees relative thereto might be reimbursable on such a theory. *See Hymes v. Harnett County Board of Education,* 664 F.2d at 410. We need not decide this question, however, because plaintiffs received attorneys' fees from the Cumberland School Committee for the work done obtaining the preliminary injunction, and those fees are not on appeal.

4. Section 504 states:
No other qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the

United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulations shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committee.

5. Regulations promulgated under section 504 by the Secretary of Education require school boards to provide handicapped children with a free appropriate public education. 34 C.F.R. 104.34. Compliance with the EAHCA is deemed to satisfy the Rehabilitation Act regulation.

not indicate a congressional intent to preclude "overlapping" actions under section 504, the EAHCA's comprehensive remedial scheme entails a rejection of fee-shifting that properly limits the fees provision of the more general Rehabilitation Act. *See* page 8, *supra.* This result is particularly appropriate where the very existence of a private right of action under section 504 is the subject of doubt. *But see Department of Education v. Katherine D.,* 531 F.Supp. 517; *Mattie T. v. Holladay,* 522 F.Supp. 72 (N.D.Miss.1981); *Campbell v. Talladega County Board of Education,* 518 F.Supp. 47 (N.D.Ala.1981); *Tatro v. Texas,* 516 F.Supp. 968.

*Reversed.*